# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**CHRISTOPHER THOMPSON,**

       **Plaintiff,**

       **v.**                         **Case No.  04-3417-JWL**

**BRANDON GAINES,**

       **Defendant.**

_____

## MEMORANDUM AND ORDER

Plaintiff Christopher Thompson, an inmate confined at the El Dorado Correctional Facility in El Dorado, Kansas, who is proceeding pro se, filed this lawsuit under 42 U.S.C. § 1983 against corrections officer Brandon Gaines alleging that Officer Gaines used excessive force to restrain him in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  The matter is presently before the court on Officer Gaines' Motion for Summary Judgment (doc. #33).[1]  Therein, Officer Gaines contends that he is entitled to

_____

[1] The court will deny Officer Gaines' Motion to Strike or For Leave of Court to Submit Supplemental Briefing (doc. #45).  Mr. Thompson's filing, which is styled as a "Supplement" on the court's docket sheet (doc. #44) actually is in the nature of a surreply.  This court's local rules allow for the filing of a motion accompanied by a brief or memorandum, a response in opposition to the motion, and a reply memorandum.  *See* D. Kan. Rule 7.1.  There is no provision in the local rules for filing a surreply and, consequently, the filing of a surreply ordinarily would not be permitted without leave of court and leave of court was neither sought nor granted here.  Nonetheless, the court has considered the contents of the Supplement because, first, the court is mindful of Mr. Thompson's status as a *pro se* litigant and therefore will afford him some degree of latitude with respect to the court's procedural rules and,

qualified immunity for his actions and also that he is entitled to summary judgment because the record reflects that he did not violate Mr. Thompson's Eighth Amendment rights as a matter of law.   As explained below, the court must view the evidence in the light most favorable to Mr. Thompson at this procedural juncture and, viewed as such, Officer Gaines is not entitled to summary judgment.   Accordingly, his motion is denied.

## STATEMENT OF MATERIAL FACTS

The incident that is the subject of this lawsuit occurred the morning of May 27, 2004, while Officer Gaines was leading Mr. Thompson out the prison yard.   It is uncontroverted that while the two were waiting in the sally port[2] leading into the prison yard, Mr. Thompson made a move away from Officer Gaines, and Officer Gaines pulled Mr. Thompson back toward him and used force to restrain him.   The parties disagree considerably over the justification for Mr. Thompson's movement away from Officer Gaines and the nature and degree of force used by Officer Gaines to restrain him.

---

second, the court finds the contents of the Supplement to be immaterial in the sense that it does not sway the court's determination of whether Officer Gaines is entitled to summary judgment.

For this same reason, the court also denies Officer Gaines' request for leave to submit supplemental briefing in response to Mr. Thompson's Supplement.   Because the issues raised in the Supplement are immaterial to the court's resolution of Officer Gaines' motion for summary judgment, allowing further briefing which belabors this point would not further the just, speedy, and inexpensive determination of this matter.

[2] A "sally port" is "a large gate or passage in a fortified place."   Webster's Third New Int'l Dictionary 2004 (unabridged ed. 1986).

In reviewing the conflicting evidence on this issue, the court is mindful of the weight it must give to the parties' respective sources of evidence. Officer Gaines' motion is based largely on the facts set out in the report filed pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). A *Martinez* report may be treated as an affidavit for purposes of summary judgment, but "the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (emphasis and quotation omitted); *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir. 1995). A pro se prisoner's complaint, if verified, meaning sworn and made under penalty of perjury, is similarly treated as an affidavit and, like a *Martinez* report, may be used as evidence at the summary judgment stage. *Green*, 108 F.3d at 1302. Here, the facts set forth in the *Martinez* report conflict in several material respects with the allegations set forth in Mr. Thompson's verified complaint and the declaration he submitted in response to Officer Gaines' motion for summary judgment, as well as the affidavits of two other inmates. The court will set forth the evidence presented by each of the parties in order to provide context to their arguments. But, of course, according to the well established standard for resolving a motion for summary judgment the court ultimately will view the facts in the light most favorable to Mr. Thompson.

**1.     Officer Gaines' Version of Events**

The incident between Mr. Thompson and Officer Gaines occurred while Officer Gaines was escorting Mr. Thompson to the exercise yard at approximately 6:49 a.m. the morning of May 27, 2004. The two were standing in the sally port waiting to go to the yard. Mr.

3

Thompson was restrained with hinge cuffs and Officer Gaines was using his right hand to hold on to the restraint chain on Mr. Thompson's backside.  About a minute later the sally port door opened and two corrections officers were waiting to escort Mr. Thompson to the yard.  Officer Gaines kept hold of the restraint chain as he gave the restraint key to one of the officers in the yard escort team.  At that time, Mr. Thompson attempted to go out to the sally port door and to the right, but the door to the recreational yard was to the left.  Mr. Thompson stopped walking when Officer Gaines' right arm became fully extended.  One of the escort team members was trying to give Officer Gaines a set of restraints, while Officer Gaines was preparing to let this escort team member take control of Mr. Thompson.  Officer Gaines began to pull Mr. Thompson back; Mr. Thompson resisted and became confrontational.  Mr. Thompson jerked, trying to break Officer Gaines' grip on the restraint chain.  Officer Gaines then pulled back on the restraint chain, pulling Mr. Thompson over Officer Gaines' left leg and tripping him.  Mr. Thompson was then placed on the floor.  Once Mr. Thompson was on the floor, Officer Gaines used his left arm to secure Mr. Thompson's upper body and his right arm to secure Mr. Thompson's lower body.  Mr. Thompson attempted to roll around and bite Officer Gaines' left arm.  Mr. Thompson was able to place his teeth on Officer Gaines' arm, just above the wrist.[3]  At this point, Officer Gaines used his right fist to strike Mr. Thompson once in the stomach.  As a result of the blow, Mr. Thompson lost his grip on Officer Gaines'

---

[3] Mr. Thompson later received a disciplinary report for battery for biting Officer Gaines.

left arm.   The escort team members then assisted in securing Mr. Thompson.   Mr. Thompson was rolled over onto his stomach and Officer Gaines placed leg irons on him.

At the end of the struggle, corrections officers noticed that, at some point, Mr. Thompson had slipped both of his arms out of the restraints.   Officer Gaines was relieved by another corrections officer who assisted the escort team members in escorting Mr. Thompson to the shower.   At 7:20 a.m. that morning, Mr. Thompson received medical attention.   The nurse noted an abrasion across his left shoulder blade and several superficial lacerations on both wrists and forearms.  She indicated that no medical treatment was needed at that time.

Officer Gaines contends that Mr. Thompson is a violent inmate.   In support of this contention, he points out that Mr. Thompson's initial convictions were for aggravated sexual battery and battery against a youth center officer.   He had eight[4] disciplinary reports, two of which were for battery for an incident that occurred on May 10, 2003 (for which he was later convicted of committing a battery against a correctional officer), and two of which were for disobeying orders.

As is explained below, Mr. Thompson's asserted justification for veering the opposite direction after exiting the cellhouse door to the sally port was that he was dropping a letter in the mail.   But, Officer Gaines points out that cellhouse rules at El Dorado do not permit

---

[4] Officer Gaines states that Mr. Thompson had eleven disciplinary reports, but only eight of those disciplinary reports pertained to incidents that occurred before the May 27, 2004, incident which is the subject of this lawsuit.   As such, the last three disciplinary reports are not pertinent to the issue of whether Officer Gaines' use of force was excessive on May 27, 2004.

inmates to deposit mail on the way to the exercise yard.  Rather, they state that inmates are to walk directly from their cell to the yard.  Mail is not on the list of items authorized for use in the exercise yard.  Cellhouse rules state that outgoing mail is to be turned into officers before 7:00 p.m. and mail is then placed in the cellhouse mailbox located in the sally port.

**2.      Mr. Thompson's Version of Events**

Mr. Thompson's verified complaint explains that he carried a letter to deposit in the mail en route to the yard.  In fact, before Officer Gaines escorted Mr. Thompson to the yard, he pat-searched Mr. Thompson and raised no objection to the letter Mr. Thompson was carrying in his hand.  On the way to the yard, Mr. Thompson was complaining about the way he had been mistreated, expressing the injustice of the system.  Once the cellhouse door to the sally port opened, Officer Gaines allowed Mr. Thompson to walk toward the mailbox to deposit the letter while Officer Gaines stood behind him, holding his waist restraining chain.  The sally port door opened and two corrections officers entered the sally port to escort Mr. Thompson to the yard.

All of a sudden, Officer Gaines "forcefully yanked/pulled" Mr. Thompson's waist chain, causing Mr. Thompson to turn around so that he was in a face-to-face confrontation with Officer Gaines.  Officer Gaines then struck Mr. Thompson in the jaw with his closed fist.  He continued to strike Mr. Thompson on his collarbone and shoulder.  He slammed his knee into Mr. Thompson's back, knocking Mr. Thompson to the floor of the sally port.  During this "melee," Mr. Thompson's hands were pulled out of the handcuffs by virtue of the force of Officer Gaines pulling, yanking, slamming, and striking Mr. Thompson.  Once Mr. Thompson

was on the floor, Officer Gaines used his left arm to secure Mr. Thompson's upper body and his right arm to secure Mr. Thompson's lower body.   Officer Gaines placed leg irons on Mr. Thompson.   Several other corrections officers then escorted Mr. Thompson to the shower. Mr. Thompson states that, contrary to the affidavits contained in the *Martinez* report, he did not resist or threaten the corrections officers or break any prison rules.   Rather, he laid on the floor and tried to protect his face from Officer Gaines' blows.

Mr. Thompson contends that the injuries he sustained have caused him "severe pain during and after [the] incident."   He received medical care for scratches on both hands, abrasions to the upper left back, bruised and sore left collar bone, dislocation to the lower back midsection, headaches, blurriness, and severe pain.

Mr. Thompson submitted a notarized affidavit from another inmate, Randy Butler, who witnessed the incident.   Mr. Butler's affidavit essentially corroborates Mr. Thompson's version of events.   It states that when Officer Gaines brought Mr. Thompson out of his cell Officer Gaines patted him down and Mr. Thompson held up something that looked like a letter.   While the two were walking, they were "arguing pretty loud about how the system works against inmates and such."   The two were standing near the cellhouse door.   When Mr. Thompson moved to place his letter in the mailbox, Officer Gaines "yanked him real hard back in the door," spun him around, hit him in the face, pulled him to the floor, hit him around the stomach area, slammed him on his stomach, and jumped with his knee in Mr. Thompson's back.   Mr. Butler's affidavit states that he started yelling that the treatment of Mr. Thompson was wrong because he has "turned in mail on the way to the yard and ha[s] never got in trouble."   As Mr.

Thompson was being pulled away, Mr. Butler noticed blood on his hands and shirt.   Mr. Thompson also has presented a notarized affidavit from James Lee Lister, another inmate who witnessed the incident.   His rendition of events is largely identical in content to the events as set forth in Mr. Butler's affidavit.

**3.      The Current Motion**

Based on this factual background, Mr. Thompson contends that Officer Gaines' use of excessive force violated his Eighth Amendment rights.   Officer Gaines now moves for summary judgment on two grounds: (1) that Officer Gaines is entitled to qualified immunity, and (2) that Officer Gaines' use of force did not violate Mr. Thompson's Eighth Amendment rights as a matter of law.   The overall thrust of Officer Gaines' motion is that his actions were not malicious and sadistic, but rather were reasonable in light of the circumstances.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).   A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Wright ex rel. Trust Co. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).   An issue of fact is "genuine"

if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

9

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## ANALYSIS

For the reasons explained below, the court finds that Officer Gaines is not entitled to summary judgment. As to his claim of qualified immunity, the court must view the facts in the light most favorable to Mr. Thompson. Viewed as such, the version of events presented by Mr. Thompson show that Officer Gaines used unconstitutionally excessive force and, furthermore, that the right to be free from the use of such excessive force was clearly established at the time of the incident. Officer Gaines therefore is not entitled to qualified immunity at this procedural juncture. Subsumed in this analysis is the court's finding that Mr. Thompson has raised a genuine issue of material fact concerning whether Officer Gaines subjected Mr. Thompson to the use of excessive force in violation of his Eighth Amendment rights.

**A.      Officer Gaines' Claim of Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to evade excessive disruption of governmental functions and to dispose of frivolous claims in the

early stages of litigation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005). In the excessive force context, the qualified immunity defense protects officers from "reasonable mistakes as to the legality of their actions." *Saucier*, 533 U.S. at 206.

When a defendant raises a qualified immunity defense on a motion for summary judgment, the plaintiff must overcome a heavy two-part burden: (1) the plaintiff must establish that the facts alleged, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right and, if so, (2) the plaintiff must demonstrate that the right was clearly established at the time of the officer's allegedly unlawful actions. *Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005) (citing *Saucier*, 533 U.S. at 201); *Phillips*, 422 F.3d at 1080 (same).

### 1. Constitutional Violation

The Eighth Amendment is the proper vehicle for evaluating excessive force claims involving prisoners. *Smith v. Cochran*, 339 F.3d 1205, 1210 n.2 (10th Cir. 2003). The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. Jail officials' use of excessive force violates a prisoner's Eighth Amendment rights when the prisoner is subjected to the unnecessary and wanton infliction of pain. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Cochran*, 339 F.3d at 1212. To succeed on Mr. Thompson's excessive force claim, he must show (1) that the alleged wrongdoing was objectively harmful enough to be unconstitutional; and (2) that Officer

11

Gaines acted with a sufficiently culpable state of mind. *Norton v. City of Marietta*, 432 F.3d 1145, 1154 (10th Cir. 2005); *Cochran*, 339 F.3d at 1212.

The objective component is "contextual and responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8 (quotation omitted); *Norton*, 432 F.3d at 1154. The extent of injury is relevant, although the absence of serious injury does not end the inquiry. *Hudson*, 503 U.S. at 7; *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992). The court may also evaluate the need for the application of force, the relationship between the need for force and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Northington*, 973 F.2d at 1524. Here, viewing the facts in the light most favorable to Mr. Thompson, it appears that Officer Gaines unnecessarily and wantonly inflicted pain on him. Mr. Thompson suffered numerous, albeit perhaps minor rather than serious, injuries. Most obviously, though, there was no need for the application of force. Mr. Thompson was harmlessly dropping a letter in the mail—a letter which, according to the evidence submitted by Mr. Thompson, Officer Gaines knew he was carrying on the way to the yard. Thus, Mr. Thompson was doing nothing more than dropping a letter in the mail when Officer Gaines initiated the assault. And, Mr. Thompson was handcuffed and wrapped in a restraint chain, presumably posing little risk of harm. Meanwhile, Officer Gaines hit Mr. Thompson in the face and around the collarbone and stomach areas and jumped with his knee in Mr. Thompson's back. The alleged beating did not involve the de minimis use of force, *see Hudson*, 503 U.S. at 9-10 (Eighth Amendment prohibition on cruel and unusual punishment generally excludes

12

from constitutional recognition de minimis uses of physical force), and it was unprovoked, *see id.* at 4-12 (summary judgment was improper where guards, for no apparently valid reason, beat inmate who was handcuffed and shackled); *see also Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) (reversing the district court's grant of summary judgment because material issues of fact existed as to whether certain prison employees participated in purportedly unprovoked beating of an inmate).  Given the complete absence of the need for any use of force to maintain order in the prison, then, the amount of force that Officer Gaines used was excessive, unwarranted, and wanton.

Officer Gaines nonetheless focuses on several aspects of the incident in arguing that he is entitled to summary judgment.  First, he points out that the documents presented in the *Martinez* report evidence that Mr. Thompson bit Officer Gaines.  But, the court cannot consider this assertion because it must construe the evidence in the light most favorable to Mr. Thompson.  Officer Gaines' allegation in this respect is contradicted by the record, in which Mr. Thompson affirmatively states that he "did not resist or threaten the correctional officers in any fashion or break any prison rules.  Rather I laid on the floor and tried to protect my face from defendant Gaines [sic] blows."  Therefore, the court must infer from the record at this procedural juncture that Mr. Thompson in fact did not bite Officer Gaines.  Second, Officer Gaines points out that Mr. Thompson violated written cellhouse rules by taking mail with him to drop off on the way to the yard.  Again, viewing the evidence in the light most favorable to Mr. Thompson, it certainly can be inferred from the evidence that these written rules generally

13

were not enforced and, in fact, that inmates routinely deposited mail on their way to the yard.

Officer Gaines also attempts to focus on the fact that he needed to subdue Mr. Thompson because Mr. Thompson was a violent inmate. Certainly, the threat reasonably perceived by Officer Gaines is relevant to the issue of whether his response to the situation was objectively reasonable under contemporary standards of decency. But, the evidentiary record presented by Officer Gaines does not conclusively establish the nature of Mr. Thompson's allegedly violent tendencies or his known reputation as a violent inmate. The evidence reflects that Mr. Thompson was imprisoned for sexual battery and battery on a corrections officer, the details of which are unknown, and that he was involved in a battery incident within the prison approximately a year prior to the incident with Officer Gaines, again, the details of which are unknown. Additionally, the record certainly does not reflect the extent to which Officer Gaines or any of the other corrections officers involved in the incident knew that Mr. Thompson was an arguably violent inmate or the extent to which they had encountered difficulties with him in the past. In short, the record simply does not support the notion that Officer Gaines knew that Mr. Thompson had such violent propensities that he posed a significant risk to disrupting the maintenance and order of the prison simply by veering the opposite direction to drop a letter in the mail.

Turning to the subjective element of an excessive force claim, this turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *accord Norton*, 432 F.3d at 1154. Again,

14

viewing the evidence in the light most favorable to Mr. Thompson, the use of force was entirely unprovoked and unwarranted.   Viewed as such, Officer Gaines' actions did not serve any valid penological purpose.   "Where no legitimate penological purpose can be inferred from a prison employee's alleged conduct . . . , the conduct itself constitutes sufficient evidence that force was used maliciously and sadistically for the very purpose of causing harm." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quotations omitted); *see also Purkey v. Green*, 28 Fed. Appx. 736, 744 (10th Cir. 2001) (where prison guard's attack on inmate was unprovoked and unnecessary, that gave rise to an inference that it was maliciously and sadistically intended to cause harm).[5]   Accordingly, the facts as asserted by Mr. Thompson also satisfy the subjective prong of an excessive force claim.

### 2.      Clearly Established Right

The court next turns to the issue of whether Mr. Thompson has met his burden of showing that the violation of his Eighth Amendment right was clearly established at the time of the incident.   The law is considered to be clearly established for qualified immunity purposes "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 446 F.3d 1069, 1077 (10th Cir. 2006); *accord Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).   "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing

---

[5] The court cites this unpublished Tenth Circuit case for its persuasive value on a material issue.

violates that right." *Harman*, 446 F.3d at 1077 (quotation omitted).  It is not necessary that "the very action in question has previously been held unlawful," but the unlawfulness of the action must be apparent in light of pre-existing law. *Id.* (same).

In this case, the court has no difficulty concluding that the law was clearly established that Mr. Thompson had a constitutional right to be free from the type and degree of force that he claims Officer Gaines applied the morning of the incident.  The Supreme Court's decision in *Hudson*, 503 U.S. at 1, is on point.  The plaintiff in *Hudson* was an inmate at a state penitentiary. *Id.* at 4.  Corrections officers placed him in handcuffs and shackles, then walked him to another area of the jail. *Id.*  The prisoner claimed that, on the way there, the defendant corrections officer punched him in the mouth, eyes, chest, and stomach. *Id*.  The Supreme Court held that these facts stated an Eighth Amendment excessive force claim and rejected the argument that the claim was untenable simply because the inmate's injuries (bruises, swelling, loosened teeth, and a cracked dental plate) were minor. *Id.* at 10.  Likewise, here, Mr. Thompson allegedly sustained relatively minor injuries from an allegedly unprovoked attack while he was in restraints being walked through the prison.  A reasonable official, then, would have understood that these actions were unlawful given the pre-existing law on this issue. Accordingly, Officer Gaines is not entitled to qualified immunity for his actions.

**B.** **Genuine Issue of Material Fact**

In addition to Officer Gaines' claim of qualified immunity, he raises the separate but highly related argument that he is entitled to summary judgment because Mr. Thompson has failed to raise a genuine issue of material fact that Officer Gaines used unconstitutionally

16

excessive force.  For reasons already explained previously, the court finds this argument to be without merit.  Certainly, a rational trier of fact could conclude that Officer Gaines' use of force was imminently reasonable.  But, viewing the evidence in the light most favorable to Mr. Thompson, as the court must at this procedural juncture, a rational trier of fact also could conclude that Officer Gaines inflicted pain on Mr. Thompson unnecessarily and wantonly.  *See, e.g.*, *Green v. Branson*, 108 F.3d 1296, 1301-02 (10th Cir. 1997) (factual record presented by inmate in response to motion for summary judgment presented issues of fact because a rational jury could find that the defendant correctional officers inflicted serious injury on the plaintiff prisoner which the plaintiff did not provoke); *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) (finding a reasonable jury could conclude that the guards' behavior fell into the category of malicious and sadistic because the guards beat him while shouting racial epithets after he had already fallen to the ground and was restrained, although affirming dismissal based upon prisoner's inability to identify the prison guards); *Lowe v. Sockey*, 36 Fed. Appx. 353, 357-58, 2002 WL 491731, at *4 (10th Cir. 2002) (finding whether correctional officials used excessive force was a disputed issue of material fact given pro se prisoner's statements that officials started a struggle with him, struck and beat him while he was restrained on the floor, beat him again before taking him to lock up, and roughed him up while he was being held by an officer).  Accordingly, genuine issues of material fact preclude summary judgment on Mr. Thompson's claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (doc. 33) is denied.

**IT IS FURTHER ORDERED THAT** the court hereby vacates the July 11, 2006, trial setting of this case.  The court re-refers this case to the magistrate judge to appoint counsel to represent Mr. Thompson for the limited purposes of engaging in alternative dispute resolution and, if unsuccessful, taking this case to trial as it currently stands without reopening discovery.  There shall be no further pretrial motion practice in this case except for motions in limine and other similar motions necessary to prepare this case for trial.

**IT IS SO ORDERED** this 13th day of June, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

18